UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MASAO KINJO and YOJU MORI,

        Plaintiffs,

   v.

CHAMPION SHIPPING AS and
CHAMPION TANKERS AS,

        Defendants.
_____/

NO. CIV. 2:09-CV-03603 FCD/DAD

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

Plaintiffs Masao Kinjo and Yoju Mori ("plaintiffs") bring this action in the United States District Court for the Eastern District of California against defendants Champion Shipping, AS, and Champion Tankers, AS, (collectively "defendants") seeking damages for injuries allegedly resulting from a collision in international waters off the coast of Taiwan between defendants' vessel M/V Champion Express ("Champion Express"), a shipping tanker registered in Liberia, and plaintiffs' vessel, the S/V Princess Taiping ("the Taiping"), a small, replica 15th century

Chinese sailing vessel registered in Hong Kong and owned by Tmax Strategy & Marketing Limited. This matter is before the court on defendant Champion Shipping AS's motion to dismiss on the basis of *forum non conveniens*. Plaintiffs oppose the motion. For the reasons set forth below,[1] defendant's motion is GRANTED.[2]

**BACKGROUND**

This action arises out of an alleged collision between the MV Champion Express and the Taiping that occurred in international waters off the coast of Taiwan on April 26, 2009 ("the Collision"). The Champion Express is a large, 609-foot chemical tanker owned by Champion Shipping and operated by Champion Tankers. The Taiping was a 53-foot wooden replica of a 15th century Chinese vessel commissioned by Taiwanese national Liu Ningsheng. The Taiping was nearing the completion of an extended voyage when the alleged collision occurred off the coast of Taiwan, destroying the vessel. (Def.'s Mot Dismiss, ("MTD") 2.) Following the collision, the Taiping's crew members were

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2] Plaintiffs also move to strike declarations submitted in support of defendant's reply memorandum, arguing that defendant's reply should be limited to the facts raised in the moving and opposition papers. The Ninth Circuit has held "where new evidence is presented in a reply . . . , the district court should not consider the new evidence without giving the non-movant an opportunity to respond." Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (internal quotations omitted). However, the court finds the declarations respond to discrete issues raised by plaintiffs' in their opposition brief, and do not raise new facts or arguments. Moreover, given the stipulations by the parties to continue the hearing almost two months later than the initial hearing date, plaintiffs have had ample opportunity to respond to the declarations, but have failed to do so. Accordingly, plaintiffs' motion to strike is DENIED.

2

rescued by the Taiwanese Air Force and Coast Guard, who transported them to Taiwan and issued a report on the incident. (Compl. ¶ 7.)

On August 28, 2009, Champion Shipping issued a Writ of Summons to initiate a limitation proceeding before the Admiralty Court of the Hong Kong Special Administrative Region Court of First Instance (the "Hong King Admiralty Court"). (MTD at 4; George D. Lamplough Decl. ("Lamplough Decl."), filed Apr. 12, 2010, ¶ 3.7.) By initiating the proceeding, the owners of Champion Express voluntarily submitted to that court's jurisdiction and consented to service of process in Hong Kong. (Lamplough Decl. ¶ 3.7.) Champion subsequently sent a copy of the Summons to plaintiffs, as well as Tmax, Taiping Master Liu Ning Sheng, and passenger Chao Hsiu Ying. Tmax, Sheng, and Ying, along with Taiping First Mate Yuquan Tang, filed acknowledgments of service in Hong Kong. (Id. at ¶ 3.9.) On September 24, 2009, Champion Shipping issued a Summons for a Limitation Decree, notice of which was sent to plaintiffs. (Id. at ¶ 3.10.) On November 10, 2009, the Hong Kong court issued a Limitation Decree, copies of which were sent to plaintiffs' attorneys. (Id. at ¶ 3.14.) Champion Shipping stipulated to an extension of time for plaintiffs to file claims in the Hong Kong action up to and including August 10, 2010, (Id. at 3.18), and have stipulated to further extension if necessary. (Id. at 4.35.)

Plaintiffs filed the present action on December 30, 2009, seeking to recover damages for physical and emotional injuries

resulting from the collision.[3]  This is one of two related actions arising out of the collision, both of which were brought by Taiping crew members.  Both of the plaintiffs in this action are Japanese citizens.  All plaintiffs in the related action, *Cook, et al. v. Champion Shipping AS, et al.,* No. 2:09-CV-03605-FCD DAD ("the Cook action"), are citizens of California and Hawaii.  The Champion Express S/V was crewed by 25 individuals at the time of the collision.  (MTD 3.)  24 crew members were citizens of India, and one was a citizen of Greece.  (Id.) Plaintiffs obtained a Letter of Undertaking for this and the Cook action in the amount of $10.5 million.  (Decl. of John M. Toriello ("Toriello Decl."), filed Apr. 12, 2010, ¶ 8.)  Champion agrees to amend the Letter of Undertaking in order to secure any judgment rendered by the Hong Kong Admiralty Court for both these plaintiffs and the plaintiffs in the Cook action in the event the present action is dismissed by this court for *forum non conveniens*.  (Toriello Decl. ¶ 8.)

**ANALYSIS**

Emphasizing plaintiff's Japanese citizenship and the foreign jurisdiction agreements already existing between the owners of the Taiping and Champion Shipping, defendant moves to dismiss this action on the basis of *forum non conveniens*, arguing, "[i]t is clear that the central focus for this claim and all other claims related to [the collision] is Asia and the most convenient location to resolve these claims is in Hong Kong."  (MTD at 6.)

---

[3] Plaintiffs have secured *quasi in rem* jurisdiction over Champion Shipping AS, and are presently attempting to secure personal jurisdiction over Champion Tankers AS.

4

Plaintiffs respond that defendant cannot make a showing sufficient to overcome the presumption that plaintiffs' chosen forum is correct. (Pls.' Opp.'n, filed May 18, 2010, at 1.)

A court has "the discretion to decline jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing) Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947). A party moving for dismissal on *forum non conveniens* grounds has the burden of showing: (1) whether an adequate alternative forum exists; and (2) whether the balance of private and public interest factors favors dismissal. Ceramic Corp. of America v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993). There is a strong presumption to honor a plaintiff's choice of forum, but a court may balance that presumption against the "private interests" and "public interests" of litigating in a foreign country. Lueck, 236 F.3d at 1145. Further, a foreign plaintiff's forum selection is entitled to less deference than an American plaintiffs. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). The Ninth Circuit considers the following "private interests" in its analysis:

> (1) the residence of the parties and the witnesses;
> (2) the forum's convenience to the litigants;
> (3) access to physical evidence and other sources of proof;
> (4) whether unwilling witnesses can be compelled to testify;
> (5) the cost of bringing witnesses to trial;
> (6) the enforceability of the judgment;[4] and
> (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

---

[4] Plaintiffs and defendant agree that this is not a significant factor.

5

Id. (citing Gulf Oil, 330 U.S. at 508). In addition, the Ninth Circuit considers the following "public interests":

    (1) local interest of lawsuit;
    (2) the court's familiarity with governing law;
    (3) burden on local courts and juries;
    (4) congestion in the court; and
    (5) the costs of resolving a dispute unrelated to this forum.

Id. at 1147 (citing Piper, 454 U.S. at 259-61). A court should consider the "private interest" and "public interest" factors applicable to a case before it and give appropriate weight to each factor. Id. at 1145 (citing Gulf Oil, 330 U.S. at 508 (citations omitted)). A court "should consider [these factors] together in arriving at a balanced conclusion." Id.

**I. Adequacy Of Alternative Forum**

The requirement of an alternative forum is generally satisfied when the defendant is amenable to process in the other jurisdiction. See Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991). This requirement may not be satisfied, however, in "rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory." Piper, 454 U.S. at 256. However, "[a] foreign forum must only provide the plaintiff with 'some' remedy in order for the alternative forum to be adequate." Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 666 (9th Cir. 2009) (citing Lueck, 236 F.3d at 1143-44 (rejecting the plaintiffs' argument that New Zealand offered no remedy for their losses because it has legislated tort law out of existence, and noting that the district court was not required to ask whether plaintiffs could bring this lawsuit there but rather, whether New

Zealand offered "a" remedy)). A forum is not inadequate simply because its laws offer a plaintiff lesser remedy than its American counterpart. Lueck, 236 F.3d at 1143 (citing Piper, 454 U.S. at 240); Loya, 583 F.3d at 666 ("[T]hat the law, or the remedy afforded, is less favorable in the foreign forum is not determinative.").

In this case, both Champion Shipping, and Champion Tankers, through a signed declaration of its Managing Director Arne Viste, have expressly agreed to submit to the jurisdiction of the Hong Kong Admiralty court. (Supplemental Decl. of Arne Viste ("Viste Supp. Decl."), filed May 28, 2010, ¶ 5.) Thus, Hong Kong is available for adjudication of this dispute.

Further, defendant presents evidence that the potential relief accorded in the Hong Kong Court is not "clearly unsatisfactory." Specifically, Hong Kong Basic Law, through The Merchant Shipping Ordinance (Cap 434), has incorporated The Convention on Limitation of Liability for Maritime Claims, 1976 ("the 1976 Convention"). Basic Law (Cap. 434), s12. The 1976 Convention, while limiting liability for shipowners for damage caused by or occurring on or in direct connection to their ship, allows for plaintiffs to recover when "it is proved that the [plaintiff's] loss resulted from [the ship owner's] personal act or omission, committed with the intent to cause such loss, or recklessly and with knowledge that such loss would probably result." (Lamplough Decl. ¶ 4.3.2 (citing Merchant Shipping (Limitation of Shipowners Liability) Ordinance (Cap 434), s4, Sch2).) Pursuant to the 1976 Convention, once plaintiffs have filed and proved their claims, the Hong Kong court will

distribute among them the amount of their proved claims, drawing from the $12.5 million Limitation Decree filed in that court by defendants. (Id. at 4.3.6 (citing Merchant Shipping (Limitation of Shipowners Liability) Ordinance (Cap 434), s12, Sch 2).) Furthermore, with respect to their personal injury claims, plaintiffs will be required to prove largely the same elements and meet the same burden of proof in Hong Kong Admiralty court as they would in an American court. See Joseph Constantine Steamship Line Ltd v. Imperial Smelting Corporation Ltd., (1942) AC 154 per Lord Maugham (establishing as the burden of proof in Hong Kong personal injury claims: "he who asserts must prove, not he who denies"). Accordingly, defendant has presented sufficient evidence that the Hong Kong Admiralty Court provides a remedy.

Plaintiffs assert that defendant's evidence is biased and thus, lacks credibility. Specifically, plaintiffs contend that George D. Lamplough ("Lamplough") is not a "disinterested expert" because he represents Champion Shipping in the limitation proceeding. However, the court's review of the bases for Lamplough's conclusions as well as a review of the underlying law support consideration of this evidence. See Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). Moreover, defendant's contentions are also supported by the declaration of Clifford Lonsdale Smith ("Smith"), a barrister practicing in Hong Kong, enlisted to provide his "independent opinion" regarding Hong Kong law and procedure. (Decl. of Clifford Lonsdale Smith ("Smith Decl."), filed May 28, 2010, ¶¶

8

3-4.) Smith has had no personal connection with the admiralty proceeding or this case. (Id. ¶ 4.) However, he declares that he is "in total agreement with the content of, and the views expressed in" the relevant portions of Lamplough's declaration. (Id. ¶ 6.) Finally, plaintiffs have proffered no evidence or argument to rebut defendant's demonstration that Hong Kong would offer an adequate forum for relief.

Accordingly, the court concludes that defendant has met its burden in demonstrating that there is an adequate alternative forum.

**II. The Balance Of Convenience**

Given the existence of an adequate alternative forum, the court must balance private and public interest factors to determine whether to dismiss on grounds of *forum non conveniens*. Lockman, 930 F.2d at 769. A court "should consider [these factors] together in arriving at a balanced conclusion." Lueck, 236 F.3d at 1145.

    **A. Private Interest Factors**

        **1. The residence of the parties and the witnesses, the forum's convenience to the litigants, and access to evidence**

In assessing whether the weight to be accorded the residence of the parties and witnesses, the court must look at "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine their accessibility and convenience to the forum." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984). An American citizen's choice to sue in their home forum is afforded deferential treatment by the court. However, "the presumption applies with less force

when the plaintiff or real parties in interest are foreign." Piper, 454 U.S. at 266.

The court concludes that the residence of the parties and witnesses weighs in favor of dismissal. Both plaintiffs in this action are Japanese citizens. They have proffered neither evidence nor argument demonstrating that California is a more convenient forum. Further, Champion Shipping identifies 37 potential "material witnesses," 30 of whom are residents of an Asian country. (Def.'s Reply Mem. ("Reply"), filed May 28, 2010, at 8.) These witnesses include the owner, master, and first mate of the Taiping, who are residents of Hong Kong, Taiwan, and the People's Republic of China, respectively. (Id.) These witnesses are likely to have relevant information regarding the "design, construction, equipment, and seaworthiness of the Taiping." (MTD 12.)

The material witnesses residing in Asian countries greatly outnumber those in the United States. Even assuming the truth of plaintiffs' contention that few of these potential witnesses are residents of Hong Kong, these witnesses are concentrated in areas closer to Hong Kong than Sacramento, California. Moreover, the testimony of these witnesses is likely to be material to the resolution of this matter. The owner, master, and first mate of the Taiping have already submitted to the exclusive jurisdiction of the Hong Kong court. The Indian crew members who were aboard the Champion Express at the time of the accident live in India. (Decl. of Arne Viste ("Viste Decl."), filed Apr. 12, 2010, ¶ 7.) The accident was investigated by Taiwanese officials, and plaintiffs were treated by Taiwanese physicians after the

collision. (Lampough Decl. ¶ 3.4) Finally, a joint survey of the Champion Express was conducted in Shanghai. (Id. ¶ 3.6.) As such, relevant witnesses that would have information relating to the accident itself, treatment of plaintiffs, and near-contemporaneous and subsequent investigations of the Champion Express are located in Southeast Asia. See Loya, 583 F.3d at 665-66 (holding that dismissal on *forum non conveniens* grounds was warranted where the conduct giving rise to litigation was "arranged, documents, outfitted, undertaken, and investigated" in Mexico).

Moreover, most of the relevant physical evidence, including investigative documents and Taiwan Coast Guard reports, is in Asia. Further, relevant documentary evidence about the design, construction, equipment, and seaworthiness of the Taiping will be located in either Hong Kong, where it was registered, or the People's Republic of China, where it was built. (Lampough Decl. ¶ 3.3.) Taiwan also maintains a vessel tracking system that monitors the movement of vessels along their coastline based on information received from AIS transponders on vessels. (Id. ¶ 3.4.) Neither plaintiffs nor defendant assert that they have control over this evidence such that it could be brought to court no matter the forum. See Lueck, 236 F.3d at 1146 (holding that the foreign location of documentary evidence weighed in favor of dismissal where it was not in plaintiff's control or under the control of a foreign government); (see also Lampaugh Decl. ¶ 4.7.7 (setting forth the procedures for the High Court to issue requests to all foreign countries and other jurisdictions within
/////

11

the People's Republic of China)).  As such, the location of such evidence weighs in favor of dismissal.

Plaintiffs argue that they are individuals of modest means and thus, the balance of inconveniences weighs in favor of this court retaining jurisdiction.[5]  However, plaintiffs' objection to litigation in a foreign forum is substantially diminished by their prior willingness to embark on a trans-Pacific voyage aboard the Taiping, a Hong Kong flagged vessel, which was scheduled to end its journey in Honk Kong.  (Opp.'n at 2.) Plaintiffs' argument is further undermined by the failure to present any argument or evidence that the cost of litigating claims in this court would be less expensive or burdensome to a Japanese citizen than litigating their claims in Hong Kong. Further, defendant presents evidence that an action in the Hong Kong Admiralty Court will require little presence by plaintiffs in Hong Kong.  Specifically, plaintiffs participate in proceeding through their solicitors and initially give evidence by written statement.  Moreover, they are not required to give depositions at an interlocutory stage.  (Smith Decl. ¶¶ 23-25.)  Finally, defendant has agreed to assist in defraying reasonable transportation and lodging costs if plaintiffs are required to appear.  (Supplemental Decl. of John M. Toriello ("Toriello Supp. Decl."), filed May 28, 2010, ¶ 4.)

Accordingly, as plaintiffs and a majority of potentially relevant witnesses reside in Asian countries, physical and

---

[5] The court notes that none of plaintiffs' arguments relate to the two named plaintiffs in this action, but rather, argue for the convenience and cost to the six named plaintiffs in the related Cook action.

12

documentary evidence is located in Southeast Asia and Hong Kong, and under the circumstances of this case, this forum is not of particular convenience to many of the litigants, including plaintiffs, these factors weighs in favor of dismissal.

      **2. Whether unwilling witnesses can be compelled to testify and the cost of bringing witnesses to trial**

Dismissal on the grounds of *forum non conveniens* may be appropriate when the court finds "critical witnesses" to the litigation are beyond its jurisdictional reach. <u>In re Air Crash over the Taiwan Strait on May 25, 2002</u>, 331 F. Supp. 2d 1176, 1200 (C.D. Cal. 2004). A defendant must delineate how witnesses not subject to compulsory process are critical to the actions, though it is not required "to identify each potentially critical witness, nor to submit affidavits that provide significant evidentiary detail." <u>Id.</u> (citing <u>Piper</u>, 454 U.S. at 258.) Further, where all witnesses to liability are located in a foreign forum and where a court would be aided by familiarity with the local landscape and easy access to the site of an accident, it may be "unfair" to make foreign defendants proceed to trial in a United States forum. <u>Piper</u>, 454 U.S. at 1199.

In this case, defendant has identified a number of critical witnesses who cannot be compelled to provide testimony in this forum, including the owners of the Taiping, crew members and passengers from the Taiping, persons involved in the design and construction of the Taiping, crew members of the Champion Express, and the surveyors retained by the owners of both vessels

to conduct the post incident surveys.[6] Moreover, as set forth above, the majority of witnesses to the accident, rescue, and subsequent investigation are located in Hong Kong or Southeast Asia. As such, the cost of bringing witnesses to trial would be substantially less if the claims were litigated in Hong Kong.

Accordingly, these private factors also weigh in favor of dismissal on the basis of *forum non conveniens*.

### 3. Other practical problems that make trial of a case easy, expeditious, and inexpensive

Finally, the court notes that defendant has made a compelling case that Hong Kong is the only forum where all claims may be resolved in a single proceeding. Collision Jurisdiction Agreements have been executed with the owners of the Taiping, the Master Liu Ning Sheng, the First Mate Yuquan Tang, and additional passenger Chao Hisu-Ying. (Lampaugh Decl. ¶ 3.20.) The Limitation Proceeding has already been initiated in Hong Kong, and defendant has already stipulated to an extension of time for plaintiffs to file claims in this action. (Id. ¶ 3.18.) Further, defendant represents that if plaintiffs were to sue Champion Tankers AS in Hong Kong, it would be open to accept service or proceedings and submit to jurisdiction. (Smith Decl. ¶ 26.)

Plaintiffs argue "no forum exists in which all the claims that arose from our collision can be resolved in a single action"

---

[6] Defendant also contends that Tmax Strategy & Marketing Ltd., the corporate owner of the Taiping, is a necessary party to this action and is a Hong Kong corporation not subject to the jurisdiction of this court. Even if Tmax Strategy & Marketing Ltd. is merely a joint tortfeasor, as suggested by plaintiffs, this fact still weighs in favor of dismissal.

14

because they refuse to submit to the jurisdiction of the Hong Kong Admiralty Court. (Opp.'n 15.) However, this assertion inappropriately equates plaintiffs' unwillingness to try their case in Hong Kong to the inability of that forum to host the entirety of this litigation with all parties present. Plaintiffs' *can* resolve their claims in a single action in Hong Kong; they simply refuse to submit to jurisdiction.

Because Hong Kong offers a forum in which all claims involving all parties could be tried in one action, the court concludes that this factor also weighs in favor of dismissal.

**B. Public Interest Factors**

Similar to the private interest factors, the court considers any or all of the public interest factors that are relevant to the dispute and gives appropriate weight to each when arriving at a balanced conclusion. Id. at 1145-46 (citing Piper, 454 U.S. at 255). Of the public interest factors listed above, defendant emphasizes plaintiff's foreign citizenship, California's minimal connection to the events giving rise to this action, the administrative difficulties and jury imposition that this case represents, and the complex choice of law question facing this court should jurisdiction over this action be retained. Defendant contends that Hong Kong's interest in this litigation is stronger than that of California, and that the cost to a California court in hearing this matter will be far greater than the cost to the Hong Kong Admiralty Court.

Given the strained judicial and administrative resources in the Eastern District, California's minimal connection to this litigation, and the complex choice of law issues represented by

15

this case, the court finds the public interest factors weigh in favor of dismissal. See Backcountry Against Dumps v. Abbott, No. CIV S-10-394, 2010 WL 2349194 (E.D. Cal. June 8, 2010) (noting that the Eastern District of California has only seven active judges who maintain a caseload of nearly 1100 cases per judge). The jury in this case will be required to hear testimony from witnesses regarding an alleged collision that took place between two differently flagged vessels in international waters off the coast of Tawian.  Plaintiffs have failed to set forth any compelling argument or legal support that this community has a generalized interest in a maritime dispute involving multinational parties in which two Japanese residents voluntarily undertook to join the crew of a Hong Kong vessel undertaking a trans-Pacific voyage.  In addition, the ultimate questions to be resolved in this action turn on events that occurred in international waters off the coast of Hong Kong.

Moreover, this action is likely to represent a complex choice of laws analysis that appears to rely heavily on the outcome of factual determinations regarding whether there was a collision or merely a close passage.  (See Reply at 2-4.)  Given California's negligible interest in providing a forum for this action, this complex analysis is not a task that the court feels compelled to undertake given the circumstances of this case. See MAN Ferrostaal, Inc. v. M/V Vertigo, 447 F. Supp. 2d 316, 323 (S.D.N.Y. 2006) (identifying the different approaches courts take to determine what law applies in vessel collission cases).  As explained by the Supreme Court in Piper:

/////

> The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law . . . [T]he public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of law, and in law foreign to itself.

454 U.S. at 251 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. at 509). Plaintiffs assert that because this litigation involves a third party claim against defendants for a collision that occurred in international waters, general maritime law should apply. (Opp.'n at 17 (citing Alkmeon Naviera, S.A. v. M/V Marina L, 633 F.2d 789, 793 (9th Cir. 1980).) Defendant asserts that whether there was a collision or only a close passage is a contested fact that substantially affects the choice of law. Without reaching the merits of this argument, it is the court's opinion that even if general maritime law were to govern this action, thereby rendering the choice of law question neutral, the weight of public interest factors still would overwhelmingly in favor of dismissal.

**CONCLUSION**

For the foregoing reasons, the court concludes that Hong Kong is an adequate alternative forum and that the balance of private and public factors weigh heavily in favor of dismissal on the basis of *forum non conveniens*. Therefore, defendant's motion to dismiss for an alternative forum is GRANTED. The clerk of the court is directed to close this file.

IT IS SO ORDERED.

DATED: August 4, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE